CARRINGTON & CO. v. E. F. WAFF.

*Contract—Failure of Consideration—Evidence.*

1. While parol evidence of an alleged oral agreement contemporaneous with the execution of a note cannot be permitted to contradict or vary the absolute terms of the written contract, cases of fraud, illegality or *want of consideration* are exceptions to this rule; and where the maker of a note in an action by the payee offered oral testimony tending to show the want or failure of consideration, it was error to reject the same.

2. Where it was agreed that a manufacturing agent of plaintiffs should keep in stock an article which the defendant, as selling agent, agreed to sell, it was a sufficient compliance with such stipulation if the manufacturing agent was prepared with material, etc., to manufacture and furnish the article on demand of the agent, although the manufactured article itself was not always in stock.

3. A note and contemporaneous article of agreement are frequently taken together as one agreement, the terms of the agreement expounding and limiting those of the note; therefore, where, by an agreement contemporaneous with a promissory note, it appeared that the note was given to secure to plaintiffs one-half of the commissions to which the defendant, maker of the note, would be entitled on the sale of a certain quantity of an article which he bound himself to use his best endeavors to sell, but of which he never sold any and therefore never became entitled to any commissions: *Held*, that no cause of action accrued to the plaintiff payees of the note.

CIVIL ACTION, tried before *Shuford, J.,* at Spring Term, 1892, of CHOWAN Superior Court, on appeal from Justice's Court.

Plaintiffs introduced and proved the execution of defendant's promissory note for $125, payable to them, and rested.

Defendant introduced a contract, the execution of which by him as party of the second part, and by the plaintiffs as parties of the first part, was admitted. The contract bore same date as the note sued on, and provided as follows:

"That the said parties of the first part, having established a permanent industry in Edenton, county of Chowan, for the purpose of manufacturing and selling the Champion Combination Slat and Wire Fence, do hereby make and constitute the party of the second part a lawful agent, with power to contract or sell the manufactured fence in the township of Edenton, county of Chowan, State of North Carolina.

"The manufactured fence to be kept in stock by the manufacturing agent, D. W. Raper & Co., at Edenton, county of Chowan, State of North Carolina, and at all times

to be furnished to the second party at factory prices, fifty cents per rod for six-wire fence, fifty-five cents per rod for eight-wire fence, and sixty cents per rod for ten-wire fence. All fence to be composed of No. 12 annealed and galvanized steel wire. The manufacturing agent has also bound himself by contract to use his endeavors to sell the fence, and on all sales made by him, or at the factory, to credit the township agent wherein the fence goes with twenty-five cents per rod. The party of the second part, for and in consideration of the rights and privileges herein granted, does hereby agree to use his endeavors to sell the fence in the above named territory, and pay the first parties five cents per rod of the commission after he has sold 1,000 rods of fence and received all of the commission, $250; as he has this day secured to be paid $125 by execution of his note, being one-half of the commission on the first 1,000 rods of fence sold, and if 500 rods of fence have not been sold at the end of six months by the said second party, then said company or their authorized representatives are fully empowered to cancel said agency and appoint another agent in his stead; but if they decide to cancel said agency, which shall be at their option, they shall surrender said note after first being paid one-half of the commission on the fence sold during the said six months.

"The second party has also the right to use on all his own land the fencing at factory prices, and the exclusive management of the business in territory assigned him."

Defendant testified that the note sued on was the note referred to in the contract, and that the note and contract were executed and delivered at the same time; that Raper & Co. had never had on hand any of the manufactured fence, except a small sample; that he made no sales and therefore did not call on Raper & Co. for any of the fence; that the agent who made the contract for the plaintiffs told

him that the plaintiffs wanted him, the defendant, to sign the note simply to show that he owed them in case he, the defendant, made sales, and that if he did not sell as much as 500 rods the note would be surrendered and payment would be required only for what was sold.

Plaintiffs objected to foregoing testimony as to the representations of the agent on the ground that it added to the written contract. The objection was sustained, and defendant excepted.

D. W. Raper, for the defendant, testified that he received the machinery for making the fence and the same was put up and the mode of operating it explained by the plaintiffs' agent; that he, the witness, had material on hand out of which to make the fence, but never had any of the manufactured fence in stock except a small sample; that his contract with plaintiffs was that he should have thirty or forty days after receiving first order for fence before he was to manufacture any of it, and after that he was to keep it in stock.

Defendant contended that there was evidence to show that plaintiffs had not complied with their agreement, and hence asked the Court to instruct the jury that plaintiffs could not recover. This the Court refused, and defendant again excepted.

The Court then stated that in no view of the case, according to the evidence of the plaintiffs, or of all the evidence introduced, was there any defence to the action, and instructed the jury that, if they believed the evidence, they should find for plaintiffs according to the face of the note. To this instruction the defendant excepted. There was judgment for the plaintiffs upon the verdict, and defendant appealed.

*Messrs. Pruden & Vann* and *W. B. Bond*, for defendant (appellant).

No counsel *contra*.

MACRAE, J. : Plaintiffs brought their action upon a promissory note, negotiable on its face, but which had not been assigned and was in the hands of the original payees, and therefore subject to any defences which the maker might have against it.

The action being before a Justice of the Peace, the pleadings were in the short form used in such Courts and the answer simply denied that defendant was indebted to the plaintiffs, or that they were entitled to judgment against him.

On the trial in the Superior Court the defendant relied upon the contemporaneous agreement (set out in the case as "Exhibit B") and offered testimony tending to prove that the note referred to in said agreement was the same note which is now sued on, and further that none of the fence referred to in "Exhibit B" had yet been sold in the territory in which defendant was to sell it. He proposed also to prove that the plaintiffs' agent, who made the contract with defendant, told him that the plaintiffs wanted him to sign the note simply to show that he owed them in case he made sales of the fence, and that if he did not sell five hundred rods of the fence the note would be given back to him and he would only have to pay for what he had sold.

The first exception is sustained: while "it is a firmly settled principle that parol evidence of an oral agreement, alleged to have been made at the time of the drawing, making or endorsing of a bill or note, cannot be permitted to vary, qualify or contradict, add to or subtract from the absolute terms of the written contract, the exceptions to this rule are cases of fraud, illegality or want of consideration." 2 Parsons on Notes and Bills, 501. The rejected testimony was competent under the exception. The defendant might, if he could, have shown by oral testimony the want or failure of consideration.

We do not think that there was evidence to show that the plaintiffs had not complied with their agreement, as the defendant requested his Honor to charge, the refusal of which request constitutes the ground of the second exception. It is true that by this agreement the manufactured fence was to be kept in stock by the manufacturing agents, Raper & Co. It appears, however, by the testimony that the said agents had the materials and machinery for making the fence, and that the defendant had not made any sales or called upon the agents to furnish any of the fence. It would seem that, up to the time referred to, it was a sufficient compliance with the stipulations if the agents were prepared with material, machinery and sample to manufacture and furnish the article upon demand of defendant. At least the defendant had no cause of complaint of breach of agreement until a demand and failure on the part of the manufacturing agents to furnish it.

But we think there was error in the instruction of his Honor that, in no view of the case, according to the evidence of the plaintiffs, or of all the evidence introduced, was there any defence to the action. The defence set up was the contemporaneous agreement by which it appears that this note for $125 was given by defendant to secure to plaintiffs one-half of the commissions on the sales of the first 1,000 rods of fence sold, to which defendant would be entitled, and the fact alleged that none of the fence had yet been sold, and the consequent want of consideration. The defendant bound himself to use his endeavors to sell the fence which was to be furnished by plaintiffs through their agents, Raper & Co.; the said agents were also to sell said fence, and defendant was to have a commission upon his own sales and upon those of Raper & Co., the manufacturing agents of the plaintiffs. It was stipulated in the agreement between the parties that the defendant was to

pay certain of his commissions to the. plaintiffs, and that the note for $125 was given to secure to plaintiffs one-half of defendant's commissions on the first 1,000 rods of fence sold in his territory.

While it is settled, as we have seen, that parol evidence of an oral agreement will not be permitted to change the terms of a note or other written contract, it is equally well established that " a note and a contemporaneous article of agreement are frequently taken together as one agreement; the terms of the agreement expounding and limiting those of the note."

Of course it will be understood that such agreement can only affect and bind those who are parties to it or have notice thereof. The principles which govern negotiable paper, assigned before maturity and without notice, can have no application to this case, because the note is still in the hands of the payees. 2 Parsons, *supra*, 534. The case of *Farthing* v. *Dark* is in many respects similar to the present one, and on the first hearing, as reported in 109 N. C., 291, it was considered that there was sufficient testimony of notice, or of facts calculated to put an assignee for value before maturity upon inquiry, that he would be affected by the equities existing between the original parties; but upon a more careful review of the testimony in that case, upon the rehearing as reported in 111 N. C., out of careful regard for the important principles affecting the transfer of commercial paper before maturity, it was held there was not testimony sufficient of facts to put the assignee upon inquiry, and therefore that it was error to have admitted testimony as to defences which plainly would have been competent between the original parties.

Upon the issue submitted—" Is the defendant indebted to the plaintiffs?"—it would have been proper for his Honor to have instructed the jury that if there was such a con-

temporaneous written agreement as the defendant offered, and if defendant had never sold 1,000 rods of the fence, or if the same had not been sold by the manufacturing agents, Raper & Co., in the territory covered by the said agreement, so that the defendant had never received or become entitled to receive the commissions provided for in said agreement, the plaintiffs' cause of action had not accrued, and the response to the issue should be in the negative.   There is error, and a new trial is awarded.

New Trial.                                             Error.